No. 80-81

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

JACK A. MARTA, ROBERT D. MARTA
and DAVID A. MARTA,

               Plaintiffs and Appellants,

    vs.

DOUGLAS L. SMITH and
EFFIE L. SMITH,

               Defendants and Respondents.

---

Appeal from:  District Court of the Fifth Judicial District,
               In and for the County of Madison.
               Honorable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellants:

        Morrow, Sedivy, Olson and Scully, Bozeman, Montana

    For Respondents:

        Jardine, McCarthy and Grauman, Whitehall, Montana

---

Submitted on briefs: September 25, 1980

Decided: JAN 12 1981

Filed:

JAN 12 1981

_Thomas J. Kearney_

                            Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiffs appeal from a judgment entered in District Court, Madison County, in favor of defendants on all issues. The plaintiffs were denied an exclusive prescriptive easement to a roadway, were found to be in wrongful possession of their "yard space", and were enjoined from using an irrigation system across defendants' land, until plaintiffs paid defendants for damages thereto. We affirm in part, vacate in part, and remand to District Court for a hearing on attorney fees and plaintiffs' motion to strike.

This dispute arose between adjacent landowners near Sheridan, Montana, and involves several pieces of property. The Martas farm about 200 acres and the family has been in possession since 1904. The Smiths own approximately 45 acres lying south of the Martas, and additional acreage lying north and east of the Martas. They have been in possession since 1977.

The road to the Marta home runs partly over the Smith property, and has been used by the Martas and their predecessors, in the same location since anyone in the neighborhood can recall. After Smiths moved in, they and other persons authorized by the defendants began using the road without Martas' permission. Martas requested that defendants quit using the roadway, which defendants refused to do.

In May 1978, Martas brought a quiet title action, in order to establish an exclusive prescriptive easement in themselves for the use of the roadway. They also sought to enjoin defendants from use of the road, and requested damages from defendants to compensate plaintiffs for the past use.

Defendants counterclaimed against plaintiffs, seeking to quiet title to the road in themselves. Smiths further sought to have an area of approximately 2/10 acre (the "yard space") restored to them, and to enjoin plaintiffs from use of an irrigation ditch over defendants' land and to compensate for damage caused by negligent use of the ditch.

Following trial, the district judge entered his findings and conclusions. He found a prescriptive easement in Martas for the use of the roadway, but he determined that it was an easement common to the parties. He refused to enjoin defendants' use. Although Martas were found to have adversely possessed the "yard space," the district judge refused to uphold the claim because Martas could present no evidence of having paid the taxes. Finally, the judge found that Martas' use of the irrigation system crossing Smiths' land was negligent, and had caused cutting and eroding of Smiths' land. He ordered Martas to cease using the irrigation system until it was repaired, or until they paid defendant for the damage caused by the use.

The plaintiffs raise several issues on appeal:

(1) Did the district judge err in determining that plaintiffs had acquired a prescriptive easement, but not an exclusive easement, across defendants' land?

(2) Did the district judge err in not enjoining defendants' use of the roadway and in not requiring defendants to compensate plaintiffs for damage caused to the roadway?

(3) Did the district judge err in denying plaintiffs' adverse possession of the yard space, despite the fact that evidence was introduced showing plaintiffs' possession since 1904?

(4) Did the district judge err in denying plaintiff's continued use of the irrigation ditch unless plaintiffs paid for damages done to defendants' land?

(5) Did the district judge err in awarding $2500 in attorney fees?

(6) Did the district judge err in awarding costs to defendants?

Both parties to this litigation concede that the Martas established a prescriptive easement in the roadway where it crosses Smiths' land. At issue is the extent of the right acquired by Martas, that is, whether both Smiths and Martas have a right to use the road, or whether Martas acquired an easement

- 3 -

with exclusive and private use in themselves.

Based on the testimony, the district judge stated in his findings and conclusions:

" . . . said right of way as herein before described is a common right of way that has been acquired by the parties by right of prescription (as to those portions not specifically owned by the parties) and that the plaintiffs and defendants are entitled to the common use of the existing roadway for the purpose of ingress and egress to their respective properties. . ."

Martas object to the "common use," and contend that the law and the evidence support their position that they should have acquired an exclusive easement.

It is settled law in Montana that in acquiring a prescriptive easement, "the right of the owner of the dominant estate is governed by the character and extent of the use during the period requisite to acquire it." Ferguson v. Standley (1931), 89 Mont. 489, 502, 300 P. 245, 250; 28 C.J.S. Easements §89. Therefore, Martas' use of the roadway cannot exceed the use which they made of it during the prescriptive period. Hayden v. Snowden (1978), 176 Mont. 169, 175, 576 P.2d 1115, 1119; State of Montana by and through the Montana Fish & Game Commission et al. v. Cronin (1978), ____Mont.____, 587 P.2d 395, 401, 35 St.Rep. 1798, 1805.

At trial, plaintiffs attempted to show that all persons who had used the road had done so only with the permission of Martas, thus establishing an exclusive and private use right in Martas. Smiths countered with witnesses who testified that the road had always been in common usage, and that Martas' permission had never been sought for the use. Effie Smith testified that during a summer of irrigating, she had used the road several times a day without objection from Martas. A predecessor of Smiths who had owned the property during the 1960's testified to using the road at least several times a week, and more often when he had cattle to tend or hay to put up. He moved cattle and farm equipment across the road without permission.

The findings of the judge indicate that he found defendants' testimony more persuasive. He found that the Martas' established use was not to the exclusion of all others. Although Martas' use was "exclusive" in the sense necessary to establish a prescriptive use in the Martas, Scott v. Weinheimer (1962), 140 Mont. 554, 561-62, 374 P.2d 91, 95-96, Martas cannot establish a private or exclusive easement where it is shown that other persons have participated in the use. Cronin, supra, _____ Mont. at _____, 587 P.2d at 401, 35 St.Rep. at 1805; 28 C.J.S. Easements §15.

There was ample testimony as to the prior uses made of the roadway. We find that there is sufficient evidence to support the judge's findings of a common easement, with the extent of use defined by the use made during the prescriptive period. We will not overturn the district judge's findings where they are supported by substantial evidence. Scott, supra, 140 Mont. at 562, 374 P.2d at 96. However, we do find that the district judge incorrectly concluded that defendants were entitled to the use of an irrigation ditch running parallel to and easterly of the roadway in question. Despite the fact that defendants did not ask for this relief, the district judge determined that defendants had acquired this right by prescription. This issue was not before the court and is not a part of this litigation. Therefore we vacate that portion of the judgment.

Based on the foregoing, we find also that the district judge properly denied the plaintiffs' request for an injunction, and their claim for damages for rutting and disrepair of the roadway. Finding No. 8 indicates:

> "That the plaintiffs have maintained said roadway throughout the years but have done so voluntarily and without request for contribution from the defendants and that no damages to said roadway were caused through the fault or neglect of the defendants and that defendants are not responsible for damages, if any, sustained or claimed by the plaintiffs."

The testimony of defendants shows that defendants and their predecessors used the roadway for carrying on a farming operation, driving animals and machinery over it. In maintaining their

- 5 -

prescriptive easement, plaintiffs have kept the roadway up despite this use by defendants and their predecessors. Martas are not entitled to damages for the proper uses to which defendants put the roadway. Neither are they entitled to an injunction to prevent defendants from putting the roadway to the uses consistent with defendants' interest in the land. Smiths cannot prevent Martas' use of the roadway, just as Marta cannot claim an exclusive private prescriptive easement. See Scott, supra; 28 C.J.S. Easements §91.

Martas next contend that the judge erred in denying their claim to the "yard space." The findings show that the plaintiffs fenced in and cultivated a portion of defendants' lands and that

> ". . . the plaintiffs claim that they are the owners of and in possession of said tract and that they have proved that they have occupied the same openly, notoriously, exclusively, adversely, uninterruptedly, visibly, hostilely, actually, and under a claim of right, and that plaintiffs, or their predecessors caused the same to be partially enclosed by a fence, but that plaintiffs failed to show by any evidence whatsoever the payment of taxes upon said lands by them and, therefore, their claim of occupancy and ownership by adverse possession cannot be sustained by reason of Section 70-19-411, MCA 1979 (Sec. 93-2513, R.C.M. 1947), and, therefor their claim of ownership by adverse possession fails . . ."

Martas admit to not paying any taxes, but contend that their adverse possession claim should be sustained because they have been in possession since 1904. No statute requiring payment of taxes was in effect until 1917, and claims made prior to that time are deemed completed without any evidence of taxes being paid. Thibault v. Flynn (1958), 133 Mont. 461, 466, 325 P.2d 914, 917.

The district judge found adverse possession, but disallowed the claim because of the nonpayment of taxes. He made no finding as to the date of the establishment of the claim. That no adverse possession was established prior to 1917 is necessarily implied in the findings and conclusions and is sup-

ported by substantial evidence. We note that the argument advanced in Thibault, supra, was briefed by counsel, and the findings indicate that the judge found it to be inapplicable. His judgment is presumed correct and we will draw every legitimate inference to support that presumption. Madison Fork Ranch v. L & B Lodge Pole Timber Prod. (1980), ___Mont.___, 615 P.2d 900, 905-906, 37 St.Rep. 1468, 1473. We uphold the district judge's conclusion that defendants are entitled to immediate possession of the yard space, because adverse possession was not established.

The district judge found that for many years plaintiffs have diverted irrigation water at a point on defendants' land, and that they have exercised their ditch rights in a "careless, negligent, irresponsible and wrongful manner," causing damage to defendants' land. He concluded that plaintiffs were not to irrigate further until the damage was repaired and the system reorganized to prevent further damage. He found damages in the amount of $5500.

Plaintiffs contend that the judge erred in finding damage to defendants' lands, because the testimony showed only that "washing" had taken place. They argue that Montana law does not impose the duty of an insurer on the owner of a ditch, and mere washing does not show any fault on the part of the irrigator.

Plaintiffs are correct in stating that an owner of a ditch is not an absolute insurer. Calvert et al. v. Anderson et al. (1925), 73 Mont. 551, 555, 236 P. 847, 848; Fleming v. Lockwood (1907), 36 Mont. 384, 391-92, 92 P. 962, 964. But this Court has not allowed any and every use of irrigation ditches, and has approved jury instructions which present the issue of negligence in construction or use to the jury. Fleming, supra, 36 Mont. at 386-93, 92 P. at 962-65.

Mr. Smith testified to erosion and cutting away of the soil on both sides of the ditch. Mr. Marsh, who testified to irrigating for the Martas, indicated that there had been cutting

at the corner of the ditch and "bad washing" at the point at which the irrigation pipe comes out. An additional witness, John Simpson, who testified to being a contractor and doing work for the Soil Conservation Service, indicated that it would take $5500 to make the irrigation system suitable, to prevent further washing on Smiths' land, and to repair past damage.

We find this evidence to be sufficient to support the judge's findings of negligence and carelessness in plaintiffs' irrigation practices, and his finding of damages of $5500. We will not overturn the district judge when there is substantial evidence to support his findings.

The district judge's conclusion No. 5 provided for dissolution of the injunction which prevented Smiths from using the roadway. He ordered plaintiffs to pay $2500 attorney fees in accordance with section 27-19-406, MCA. Plaintiffs contend that the statute does not allow for fees over $100, and in addition that no hearing was had to establish the fees.

Section 27-19-406, MCA, does set a $100 limit on the recovery of costs. However, this Court has determined that attorney fees and costs are recoverable under section 27-19-306, MCA, as elements of the damages sustained by reason of the injunction, and no such monetary limit appears in that statute. Our past decisions have sanctioned the determination of the fee by using the "reasonable" standard. Boz-Lew Builders v. Smith (1977), 174 Mont. 448, 455, 571 P.2d 389, 393; Godfrey v. Pilon (1974), 165 Mont. 439, 448-449, 529 P.2d 1372, 1377; Sheridan County Electric Co-op v. Ferguson (1951), 124 Mont. 543, 551, 227 P.2d 597, 602. Despite the fact that section 27-19-306 provides for recovery by an action on an injunction bond, we apply the same reasonable standard to those actions for attorney fees in which a bond is not involved. In making attorney fees an element of damages under section 27-19-306, the legislature surely did not intend to make the recovery depend on the judge's discretion in demanding an injunction bond. Thus we find that the district judge should

have awarded reasonable fees as an element of damages, pursuant to section 27-19-306, MCA, and not as costs of suit.

In this case, there was no evidence before the District Court as to what constituted a reasonable fee. The district judge cannot make a determination without having such evidence before him. First Security Bank of Bozeman v. Tholkes (1976), 169 Mont. 422, 429, 547 P.2d 1328, 1331-32; Crncevich v. Georgetown Rec. Corp. (1975), 168 Mont. 113, 120, 541 P.2d 56, 59. Therefore we vacate the award of attorney fees and remand this case to the District Court for a hearing as to reasonable fees.

Defendants submitted to the court a memorandum of costs of $1,073.87. Plaintiffs thereafter moved the District Court to strike the memorandum of costs for failure to serve it upon the plaintiffs or their attorney within five days after notice of the decision, pursuant to section 25-10-501, MCA, or in the alternative, to tax costs. The district judge did not rule on the motion and allowed the costs as claimed by defendants to stand. On appeal, defendants admit that several items of cost were incorrectly listed. Because of the District Court's failure to consider this timely motion of plaintiffs, we vacate the award of costs, and remand to the District Court for a hearing on the motion.

We remand this case to the District Court for further proceedings consistent with this opinion.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 9 -