No. 84-456

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

ELMER FLYNN, KATHLEEN McKINNON,
PATRICIA SINCLAIR and FRANCIS
MCQUADE,

          Plaintiffs and Respondents,

    -vs-

BRUCE T. SIREN and MARY L. SIREN,
husband and wife,

          Defendants and Appellants.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Milodragovich, Dale & Dye; Lon J. Dale, Missoula,
        Montana

    For Respondent:

        Mulroney, Delaney & Scott; Dexter Delaney, Missoula,
        Montana

---

        Submitted on Briefs: Aug. 1, 1985

        Decided: January 7, 1986

Filed: JAN 7 - 1986

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

During a jury trial, the Missoula County District Court entered a directed verdict adjudging that plaintiffs are entitled to the ungated, unbarricaded, unchained, free and unobstructed use of a right-of-way easement. The jury returned a verdict finding that the plaintiffs had not abandoned any portion of the easement. Defendants appeal both verdicts. We affirm.

The issues on appeal are:

1. Did the District Court err in directing a verdict that as a matter of law defendants' obstructions interfered with plaintiffs' use of their granted private easement?

2. Did the District Court err in granting plaintiffs' motion to strike defendants' counterclaim for damages?

3. Did the District Court err in giving jury instructions 4 and 6 on the issue of partial abandonment?

4. Was there sufficient evidence to support the jury verdict?

In April 1960, defendants' immediate predecessors in interest executed a Conveyance of Easement for Right of Way to the plaintiffs. By its terms, this instrument granted and conveyed to the plaintiffs the right, privilege and authority to use a rectangular tract 28 feet wide by 1320 feet long as a right-of-way . The instrument contained the following:

> The Grantees may fence said right of way if they so desire.
>
> TO HAVE AND TO HOLD the same unto the said Grantees, their heirs and assigns, forever, as long as said land is used for right of way purposes, and if same is ever abandoned for such purpose, then this Easement shall be nul and void and of no further force and effect and title shall revert to the Grantors, their successors or assigns.

2

The conveyance was properly recorded. The defendants had actual knowledge of the easement and purchased the property subject to the same in 1974.

In 1979, the defendants obstructed the easement, initially by means of a gate and then by locked chains. In each instance, the obstruction was taken down within two days. One of the plaintiffs, Elmer Flynn, admitted that on at least two occasions he dismantled the obstruction blocking the easement. In October 1979, plaintiffs filed a complaint against the defendants asking for a free and unobstructed right-of-way over the easement. Defendants' counterclaimed that the obstructions did not impair the easement and alleged that a portion of the easement had been abandoned. Defendants sought both compensatory and punitive damages.

In City of Missoula v. Mix (1950), 123 Mont. 365, 372, 214 P.2d 212, 216, this Court set forth the limitations on the right of an owner of land subject to an easement to interfere with the use of the reserved easement, stating:

> The owner of a reserved easement may use it to the full use of the right retained. The owner of the servient tenement may make use of the land in any lawful manner that he chooses, which use is not inconsistent with and does not interfere with the use and right reserved to the dominant tenement or estate.

With regard to any limitation of the use of the right-of-way easement by the dominant tenement, members of the family and others, the Court stated:

> In the absence of express restrictions in . . . the grant, it see[m]s that all persons who can be regarded as having permission, express or implied, to enter on the dominant tenement, may use a way for the purpose of access to such tenement and of egress therefrom. Consequently members of the family of the dominant owner, his servants and employees, his guests, and tradesmen and other persons with whom he does business, may do so. Such persons are not guilty of trespass in using the way, and the owner of the easement would, it seems, have a right of action in case there was an

3

interference with the use of the way by a member of one of these classes.

City of Missoula, 123 Mont. at 374, 214 P.2d at 217, quoting 3 Tiffany, Real Property § 803 (3d ed. 1939). The foregoing is the general rule with regard to easement interference in Montana. See Annot., 52 A.L.R.3d 9 (1973) for reference to numerous cases involving the installation of gates in various states during the past 100 years.

I

Did the District Court err in directing a verdict that as a matter of law defendants' obstructions interfered with plaintiffs' use of their granted private easement?

The law with respect to directed verdicts is well settled in this state.

> Upon a motion for a directed verdict by a party, the evidence introduced by his opponent will be considered in the light most favorable to opponent. Thereupon, the conclusion sought by the moving party must follow as a matter of law. . .
>
> Generally, directed verdicts are not favored by the courts. . . A cause should never be withdrawn from the jury unless the conclusions from the facts advanced by the moving party follow necessarily, as a matter of law, that recovery can, as here, or cannot be had under any view which can be reasonably drawn from the facts which the evidence tends to establish. . . A corollary rule is that where reasonable men might differ as to the conclusions of fact to be draw from the evidence, viewed in the light most favorable to the party against whom the motion is made, a jury question is presented, and resolution by way of directed verdict is improper. [citations omitted]

Sistock v. Northwestern Tel. Systems, Inc. (Mont. 1980), 615 P.2d 176, 178-79, 37 St.Rep. 1247, 1249, quoting Lawlor v. Flathead County (1978), 177 Mont. 508, 582 P.2d 751, 754.

After a careful review of the record, we conclude that the evidence submitted in behalf of the plaintiffs establishes that the placing of the gate on the easement created a traffic hazard; that the gate, as installed, was too small to allow the passage of some farm machinery; and

4

that the gate would have reduced the clientele of one plaintiff's typing business and of another plaintiff's sewing business. This evidence was uncontradicted by the defendants.

In its directed verdict, the District Court concluded that if the easement were gated, barricaded, chained or obstructed, the plaintiffs' use of the easement would have been impaired to such an extent as to defeat the purpose of the easement. The District Court pointed out that the business invitees, agents, lessees and employees of the plaintiffs would have been thwarted in using the easement.

Considering the evidence in a light most favorable to the defendants, we agree with the District Court's conclusion that a gated easement interferes with the right granted to the plaintiffs. We affirm the holding of the District Court that plaintiffs are entitled to an ungated, unbarricaded, unchained, free and unobstructed use of the right-of-way.

II

Did the District Court err in granting plaintiffs' motion to strike defendants' counterclaim for damages?

After the entry of the directed verdict for the plaintiffs, the District Court also granted plaintiffs' motion to strike the defendants' counterclaim for damages and withdrew that issue from the jury. Our standard of review for removal of an issue from jury consideration is the same as that of a directed verdict:

> . . . [A]n issue should never be withdrawn from the jury unless the conclusions from the facts advanced by the moving party follow necessarily, as a matter of law, that recovery cannot be had under any view which can be reasonably drawn from the facts which the evidence tends to establish.

Dahl v. Petroleum Geophysical Co. (Mont. 1981), 632 P.2d 1136, 1139, 38 St.Rep. 1474, 1477-78.

5

Under the facts of this case and our affirmance of the District Court's conclusion that the obstructions were an unreasonable interference with the granted right-of-way, we conclude that defendants had no legal theory by which they could justify a claim for damages. We affirm the District Court's withdrawal from the jury of defendants' counterclaim for damages.

## III

Did the District Court err in giving jury instructions 4 and 6 on the issue of partial abandonment?

The defendants must show that the instructions were prejudicial before they constitute reversible error. Gaither v. Richardson Construction Co. (1969), 152 Mont. 504, 512, 452 P.2d 428, 432. In reviewing jury instructions, this Court must consider all jury instructions as a whole. As stated in Rock Springs Corp. v. Pierre (Mont. 1980), 615 P.2d 206, 211, 37 St.Rep. 1378, 1383:

> When determining whether jury instructions are properly given or refused, this Court considers the instructions given in their entirety and review[s] them in light of the evidence adduced . . . This Court has ruled that where the jury instructions, taken as a whole, state the law applicable to the case, a party cannot claim reversible error as to the giving of certain instructions . . . [Citations omitted.]

The easement in this case was twenty-eight feet wide. A fence had been installed which divided it into one span approximately twenty feet in width and another span eight feet in width. Approximately eighteen feet out of the twenty foot span was used for roadbed and shoulders. Defendants argued that plaintiffs had abandoned all of the eight foot width of the easement south of the fence.

The District Court gave the following instructions on the issue of partial abandonment:

6

INSTRUCTION NO. 4

If an easement is specifically described as being a specific width and length and has not been abandoned, it is unlawful for the person on whose land the easement is in existence to reduce the size of the easement.

INSTRUCTION NO. 5

Since abandonment can extinguish an entire easement, it can likewise extinguish such portion of an easement which becomes surplusage to the intended and executed purpose of the grant.

INSTRUCTION NO. 6

The owner of the property on which an easement is situated, if he has notice or knowledge of the existence of the easement, is bound by the terms of the easement as stated therein.

Defendants argue that instructions 4 and 6 precluded the jury from finding abandonment and in substance directed a verdict for the plaintiffs. We disagree.

Instruction 5, which is not mentioned by the defendants, states in substance that abandonment can extinguish a portion of an easement which becomes surplusage to the intended purpose of the grant. By considering the three instructions together, it is clear that the jury was instructed that the defendants, as owners of the property, were bound by the terms of the easement, and that if the easement had not been abandoned, it was unlawful for the defendants to reduce the size of the easement. In addition, the jury was advised that abandonment can extinguish the entire easement or such portion of the easement as might become surplusage to the intended purpose.

The instructions taken as a whole were not contradictory. We conclude that the court did not commit error in giving instructions 4 and 6.

7

## IV

Was there sufficient evidence to support the jury verdict?

A jury verdict will not be overturned where the record contains substantial credible evidence to support the verdict.

> Sufficiency of the evidence. We will not reverse a judgment based upon a jury verdict if there is substantial evidence in the record to support the jury verdict. . . We review in the light most favorable to the prevailing party, reversing only when there is a lack of substantial evidence to support the judgment based upon the jury verdict . . .
>
> The "substantial evidence" test variously expressed allows reversal only if there is a complete absence of probative facts to support the verdict . . . or if the evidence is so overwhelming there is no room for an honest difference of opinion . . . or if there is a complete absence of any credible evidence in support of the verdict. [citations omitted]

Kleinsasser v. Superior Derrick Service, Inc. (Mont. 1985), 708 P.2d 568, 569-70, 42 St.Rep. 1662, 1664.

Plaintiff, Elmer Flynn, testified that he used and needed the whole right-of-way. After reviewing the record in a light most favorable to the prevailing party, we conclude there is substantial evidence to support the jury verdict.

We affirm the District Court.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

8