Argued and submitted April 29, affirmed October 27, 2010

Tony McGRATH,
Fred Barnes,
and Summit Consulting, LLC,
dba Shelton Auto Parts,
*Plaintiffs-Respondents,*

*v.*

Gene BRADLEY
and Trudy Bradley,
husband and wife,
*Defendants-Appellants.*

Josephine County Circuit Court
05CV0698; A139983

242 P3d 670

Frank C. Rote, III, argued the cause for appellants. With him on the briefs was Hughes, Rote & Brouhard, LLP.

Kendell H. Ferguson argued the cause for respondents. With her on the brief was Cauble, Dole, Sorenson & Ransom, LLP.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Plaintiffs brought this action for quiet title, claiming that they had established a prescriptive easement for a driveway across defendants' property. Defendants responded that plaintiffs and their predecessors used the driveway in question by permission and, thus, that their use could not have ripened into a prescriptive easement. Defendants also asserted that, even if plaintiffs and their predecessors had established a prescriptive easement, it had been extinguished by defendants' and their predecessors' adverse use of the easement. The trial court ruled in favor of plaintiff McGrath, concluding that he and his predecessors had established a prescriptive easement across defendants' property and that defendants had not extinguished that easement.[1] Defendants appeal. On *de novo* review, ORS 19.415(3) (2007),[2] we affirm.

We take the following facts from the record. This case involves four parcels of commercial property that lie within a single city block between 5th Street and 6th Street in Grants Pass. Three of the parcels front on 6th Street: lots 1100 and 1200, which are owned by plaintiff, and lot 1000, which defendants own. Defendants also own the fourth parcel, lot 900, which fronts on 5th Street. The driveway in question is on lot 900 and runs from 5th Street to the back of lot 1100. Lots 1000 and 1200 are accessible by the driveway as well.

A business known as Shelton Auto Parts (Shelton) has been located on lots 1100 and 1200 since the 1940s. The Shelton family operated the business from the 1940s until 1970. Plaintiff and a business partner purchased Shelton in 1970. Plaintiff individually purchased the property—lots 1100 and 1200—in 1985. In 2001, Barnes and Summit

---

[1] The trial court ruled that only plaintiff McGrath had a claim for a prescriptive easement, concluding that plaintiffs Barnes and Summit Consulting, LLC, did not have an ownership interest in the land. Plaintiffs do not challenge that ruling on appeal. For simplicity, all references to "plaintiff" in this opinion refer to McGrath only.

[2] A 2009 amendment to ORS 19.415(3) made *de novo* review in most equity cases discretionary. *See* Or Laws 2009, ch 231, § 2. Because the notice of appeal in this case was filed before the effective date of the amendment, we apply the 2007 version, under which *de novo* review is required.

Consulting, LLC, purchased Shelton; however, plaintiff remains the sole owner of lots 1100 and 1200, and Barnes and Summit Consulting, LLC, rent those lots from plaintiff.

From 1975 to 2005, lots 900 and 1000 were owned by Ronald and Betty Hodges, who operated a business called Andy's Plumbing and Electrical Supply (Andy's) on lot 1000. Both of the lots and the business were previously owned by Ronald's parents and other relatives. They had owned the property and operated the business since 1968 or 1969. Before the Hodges purchased the business and the property, Ronald worked for Andy's, beginning in 1972. In 2005, defendants purchased lots 900 and 1000 and the business.

The driveway in question is an integral aspect of Shelton's business. Customers have used the driveway to reach the parking area behind the building since at least the late 1950s. The driveway served as an access point for freight trucks delivering merchandise and for garbage and heating oil delivery trucks. Employees have used the driveway to reach the parking area as well. A sign at the driveway entrance off 5th Street has designated the driveway as an access to Shelton since at least the 1960s.

In the early 1980s, Ronald Hodges began charging Shelton rent of $100 per year. The parties dispute what the rent was for. Defendants contend that the rent was for use of the driveway; plaintiff contends that it was for parking in an alley, on lot 1000, between Shelton and Andy's. The evidence in the record as to the purpose of the rent is conflicting. Shelton paid the rent from the 1980s until 2005, when this case was initiated.

Plaintiff brought this action in October 2005.[3] The case went to trial in 2008. At the trial, several long-time residents of Grants Pass testified that they had been Shelton customers as far back as the late 1950s, and that they had used the 5th Street driveway to reach the business and had assumed that it was an appropriate way to get there. For example, Ronald Martin testified that, in the 1960s, he was a car enthusiast and went to Shelton "at least a couple times a

---

[3] Plaintiff's complaint also included a claim for interference with economic advantage. That claim was ultimately dismissed and is not at issue on appeal.

month." He testified that he entered from 5th Street on the driveway and that he recalled seeing other people using the driveway as well, adding, "It wasn't uncommon to see hoods raised and people running in getting parts there" and that those customers "also would be people coming in off [5th] Street[.]" Martin also testified that there was a "Shelton's" sign at the driveway entrance.

Plaintiff testified that, from 1965 to 1970, he worked at a Ford dealership located within a block of Shelton and, for two years before that, at another automotive business on the same block. He said that the businesses "traded parts back and forth" and that he used the driveway every day to pick up parts. Plaintiff also testified that, during that time, he had seen freight trucks behind Shelton delivering boxes and that occasionally he had to wait for them to get out of the way before he could back up to the building to pick up a heavy item.

Defendants presented no evidence concerning the use of the driveway in the 1950s and 1960s.

The parties adduced considerable—and conflicting —evidence concerning a gate on the 5th Street driveway and who controlled the lock on it as well as evidence—also conflicting—concerning the rent payments that Shelton made to Hodges, whether the rent was for use of the drive-way or for parking in the alley, and whether plaintiff was aware of and authorized the rent payments. The details of that evidence are not material to our decision on appeal, so we need not belabor them here.[4]

At the conclusion of the trial, the court ruled that plaintiff had established a prescriptive easement for the driveway and entered a general judgment in his favor.

On appeal, defendants assign error to the trial court's ruling, again arguing that plaintiff failed to establish a prescriptive easement. Defendants further contend that, if

---

[4] On appeal, defendants argue that the trial court made findings that are inconsistent with the evidence concerning who installed and controlled the gate. However, they do not argue that contrary findings would affect the outcome of the case. Thus, we need not make findings on those issues or otherwise address the significance of the evidence to which defendants refer.

plaintiff and his predecessors did establish a prescriptive easement by the 1980s, the easement was extinguished between the 1980s and 2005 because plaintiff authorized rent payments for use of the driveway.

■■ We begin by considering whether plaintiff and his predecessors established a prescriptive easement for use of the driveway. A party seeking to establish a prescriptive easement must show, by clear and convincing evidence, that their use of the property was open or notorious, adverse to the rights of the owner, and continuous for 10 years. ORS 12.050; *Martin v. G. B. Enterprises, LLC*, 195 Or App 592, 595-96, 98 P3d 1168 (2004). For evidence to be "clear and convincing," the truth of the asserted facts must be highly probable. *Beers v. Brown*, 204 Or App 395, 403, 129 P3d 756, *rev den*, 341 Or 579 (2006).

■■ Where a nonowner's use of real property is open and notorious and continues for the statutory period, the nonowner's use is presumed to have been adverse, and the burden shifts to the property owner to show that the use was not adverse. *Feldman et ux v. Knapp et ux*, 196 Or 453, 470-71, 250 P2d 92 (1952) (quoting *Coventon v. Seufert*, 23 Or 548, 550-52, 32 P 508 (1893)). The property owner may rebut the presumption of adversity by showing that the nonowner's use during the prescriptive period was permissive.[5] *Id.* However,

---

[5] Prior case law suggests several means of rebutting the presumption of adversity that have not been raised in this case. Where a party attempts to establish a prescriptive easement by showing use of an existing way over another person's property, "it is more reasonable to assume that the use was pursuant to a friendly arrangement between neighbors rather than to assume that the user was making an adverse claim." *Woods v. Hart*, 254 Or 434, 436, 458 P2d 945 (1969). Where there is no evidence showing who constructed the way and it is used in common by both the easement claimant and the servient owner, "it should be presumed that the servient owner constructed it for his own use." *Trewin v. Hunter*, 271 Or 245, 248, 531 P2d 899 (1975). Moreover, if the evidence gives rise to the presumption of adversity, it may be rebutted by evidence that the claimed easement is over an existing way and that the claimant's use of the way did not interfere with the servient owner's use of it. *Woods*, 254 Or at 437.

In this case, there is no evidence in the record to establish who constructed the driveway. However, at trial, defendants did not raise any issue concerning whether the driveway was an "existing way" or whether plaintiff's or his predecessors' use of it interfered with defendants' predecessors' use of it; nor do they raise those issues in their briefs on appeal. Because defendants did not raise those issues, we do not consider them.

the property owner must do more than show "mere acquiescence" in the nonowner's use of the land in order to establish that the nonowner's use was permissive. *Id.* at 472. Adverse use by successive owners in privity can be tacked to complete the prescriptive right, and adverse use of an easement by a tenant "inures to the benefit of his landlord in establishing a right by prescription." *Id.* at 474-75.

In asserting that plaintiffs failed to establish a prescriptive easement, defendants focus largely on the period in which Shelton paid Hodges rent—that is, the period beginning in the early 1980s. They contend that the evidence shows that the rent was for use of the driveway and the payment of rent demonstrates that the use was permissive during that period. Defendants do not argue that plaintiff's and his predecessors' use was permissive before Hodges began charging rent in the early 1980s. Rather, they assert that plaintiff's evidence of open and notorious use is insufficient.

Plaintiff responds that he never entered an agreement with Hodges to pay rent for use of the driveway and, in all events, that a prescriptive easement had vested already by the time Hodges began charging rent.

■ For purposes of deciding whether plaintiff established a prescriptive easement, we need not address the parties' dispute as to the purpose of the rent, because we agree with plaintiff that an easement had already vested when Hodges began charging rent. Plaintiff unquestionably established that his and his predecessors' use of the driveway was open and notorious for at least 10 years before the 1980s. Indeed, there is clear and convincing evidence in the record that it was open and notorious from at least the early 1960s, if not before. Thus, their use of the driveway is presumed to have been adverse. Given that defendants make no argument that that use was permissive or that they otherwise rebutted the presumption of adversity before the early 1980s, we conclude that plaintiff established a prescriptive easement.

■ The only remaining question is whether defendants extinguished that easement. Defendants argue that, because Shelton paid rent for use of the driveway for more than 20 years, its use was permissive, which extinguished the

easement. In other words, defendants contend that they need not establish all of the elements of adverse possession; in their view, a prescriptive easement can be lost if it is not used adversely—that is, that it is used with permission—for at least 10 years. Defendants cite no authority for that proposition, and we are aware of none. Accordingly, even assuming that rent was paid for use of the driveway, we reject defendants' argument.

■ ■ Finally, to the extent that defendants argue on appeal that the easement was extinguished by adverse possession, the evidence does not support that position. It has long been the law in this state that, to extinguish an easement by adverse possession, the servient owner must, in addition to establishing the elements of adverse possession, show that his or her use of the burdened property is incompatible with the easement owner's use of the easement. *See Hoffman v. Dorris*, 83 Or 625, 629, 163 P 972 (1917) ("[I]f the grantee of an easement is prevented from enjoining it by the open, unequivocal, continued use by the servient owner, that is, by such a use as is incompatible with the possession and use of the easement by the dominant owner, and such adverse possession should continue for the statutory period prescribed for acquiring an adverse interest in real property, then the easement is lost."); *Stonier v. Kronenberger*, 230 Or App 11, 18, 214 P3d 41 (2009) ("To establish adverse possession of an easement, the claimant must show that his or her use of the property was actual, open, notorious, exclusive, continuous, and hostile for a 10-year period, and that the use was inconsistent with the use of the easement by the owners of the dominant estate."). The record in this case shows that neither defendants nor their predecessors used the driveway in a manner that was inconsistent with plaintiff's use of it. It follows that the easement has not been extinguished.

The trial court did not err in entering judgment for plaintiff on the prescriptive easement claim.

Affirmed.